FRIEDLANDER, Judge,
dissenting.
With but one minor exception, I believe the trial court’s findings are supported by the evidence and that the evidence supports termination of S.W.’s parental rights to R.A. Therefore, I would affirm the trial court’s judgment and respectfully dissent from the majority’s decision to do otherwise.
Concerning the minor exception mentioned above, I agree with the Majority that Finding 89 is problematic. But considering the substance of that finding in the context of the trial court’s ruling, any error concerning Finding 39 is of small import. My fundamental disagreement with the Majority concerns Findings 37 and 38, and, to a lesser extent, Finding 43. Findings 37 and 38 address S.W.’s refusal to participate in the Fatherhood Engagement program while he was in jail. The findings indicate that this program was available to S.W. while he was in jail, that he was asked to participate in the program, and that he declined. The findings further indicated that although S.W. was not interested in participating in a program that might be helpful to him in learning to parent his child—not to mention useful to him (with respect to the CHINS and termination proceedings) in his endeavor to establish and maintain a relationship with that child—he expressed interest in participating only in a program called “Breaking Chains”. Ultimately, he did not participate in that program either. The Majority acknowledges that the evidence supports these findings but concludes that his refusal to participate in those programs does not support the conclusion that the conditions that led to R.A.’s removal or placement outside the home would not be remedied. This in turn is based upon the fact that S.W. was not ordered to participate in those programs in the first place. It is true that he was not ordered to participate in those programs, but in my view that does not negate the validity of the inference drawn by the trial court that S.W.’s refusal to do so foreshadows what is to come.
While incarcerated on charges of sexual misconduct with a minor, theft, reckless possession of paraphernalia, and possession of paraphernalia, S.W. learned that he was R.A.’s biological father. At that point, he joined the CHINS matter and agreed to dispositional goals, which were set out by the trial court in a January 15, 2013 “Order on Facilitation”. The CHINS court accurately summarized those goals as follows:
[Mjaintain appropriate housing; provide proof of financial resources sufficient to provide for the family; allow DCS/ CASA to visit announced or unannounced; pay child support as ordered; remain in contact with the FCM; notify FCM of changes in household composition; not use, consume, or distribute controlled substances; demonstrate the ability to meet the child’s physical and age-appropriate supervisory needs; execute consents for release of information; contact DCS within forty-eight (48) *323 hours of his release from incarceration; participate in home-based case management upon release; undergo a parenting assessment and follow through with the recommendations therein; submit to random drug screens; undergo substance-abuse assessment; participate in parenting time and case planning conferences.
Appellant’s Appendix at 6. Moreover, paragraph (q) of the January 15 order included the following condition: “Father will participate in Fatherhood Engagement”. Id. at 17. Paragraphs (a)-(p) of the January 15 order consisted of multiple conditions that S.W. was required to meet, but which were not relevant (e.g., “Father will maintain housing that is appropriate for family size that provides at least the minimum level of care”) until he was released from incarceration. Id. at 16. Thus, they were made “subject to his release from incarceration” in the order. Id. There was one condition, however, that he could satisfy while incarcerated—participate in the Fatherhood Engagement program. Aware that his parental rights were in jeopardy, S.W. nonetheless refused to do this.
In order to terminate parental rights, the State must establish, among other things, that the conditions that resulted in a child’s removal from the home will not be remedied. In making this determination, a court first must identify the conditions that led to placement outside the home, and second must determine whether there is a reasonable probability that those conditions will not be remedied. KT.K. v. Ind. Dep’t of Child Servs., Dearborn Co. Office, 989 N.E.2d 1225 (Ind.2013). The second task is an exercise in prediction. When a court determines that the conditions that led to the child’s removal from the home are not likely to be remedied, it must evaluate the parent’s conduct or pattern of conduct and decide what that portends for the future.
Although it is not clear when S.W. became aware that he had fathered a child, it is clear that he was not incarcerated for the whole of R.A.’s life. Yet, S.W. made no attempt to establish a relationship with the child before he was incarcerated. When definitely apprised of that fact while incarcerated, he refused to complete the Fatherhood Engagement program at a time when he cannot plausibly claim to have been too busy to do so or indeed to cite any other logistical impediments as an excuse for failing to participate. There is no indication that he exerted any effort to establish a relationship with the child from jail. Moreover, it is not insignificant that S.W. acknowledged at the termination hearing that he had signed a consent for his sister to adopt R.A.
Our Supreme Court has acknowledged that a trial court may consider past behavior as the best predictor of a parent’s future behavior. See In re E.M., 4 N.E.3d 636 (Ind.2014). Moreover, in this case I am particularly mindful of one the guiding considerations when called upon to review a termination of parental rights, i.e., that “a trial court need not wait until a child is irreversibly harmed before terminating the parent-child relationship.” In re N.Q., 996 N.E.2d 385, 391 (Ind.Ct.App.2013). S.W.’s actions and failures to act have foreshadowed .what is .to come. Moreover, the conclusion that the continued presence of S.W. in R.A.’s life will not be in R.A.’s best interest is supported by the evidence of what S.W. has done, and refused to do, thus far. Upon this basis, I believe the petition to terminate is sustainable on this record, and respectfully dissent from the decision to reverse it.